# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>VICTOR WOLFE,<br><br>          Defendant. | 8:16CR88<br><br>**FINDINGS AND RECOMMENDATION** |

      This matter is before the court on the Motion to Suppress Statements (Filing No. 17) filed by Victor Wolfe (Wolfe). Wolfe is charged in the Indictment with the January 22, 2016, aggravated assault of an Indian female on the Omaha Indian Reservation in violation of 18 U.S.C. §§ 113(a)(3), 113(a)(6), and 1153 (Counts I and II). Wolfe seeks to suppress statements he made to Special Agent Steve Friend (Agent Friend) of the Federal Bureau of Investigation (FBI) while Wolfe was in custody on January 25, 2016.

      Wolfe is represented by Assistant Federal Public Defender Kelly M. Steenbock. The United States is represented by Assistant U.S. Attorney Douglas R. Semisch. On April 7, 2016, both counsel advised the court the motion to suppress should be decided upon the transcript of Agent Friend's interview with Wolfe on January 25, 2016, and the briefs of the parties (Filing Nos. 18 and 22). The transcript was filed as part of the government's brief (Exhibit 1 - Filing No. 22-1). The motion is deemed submitted as of April 7, 2016.

## FINDINGS OF FACT

      Wolfe was accused of beating and wounding an Indian female on the Omaha Indian Reservation on January 22, 2016. On that same date, Wolfe was located and arrested by Omaha Nation Law Enforcement Officer Carrillo and booked into the Omaha Nation Law Enforcement Services Detention Center in Macy, Nebraska. Agent Friend interviewed Wolfe while he was in custody at the Detention Center on January 25, 2016.

Upon initiating the interview with Wolfe, Agent Friend advised Wolfe of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  As part of the advisement, Agent Friend said,

> If you decide to answer questions now without a lawyer present you have the right to stop answering at any time. And I will also add to that, that if I ask you a question and you don't want to answer that certain question you can say I don't want to answer that question and we will just keep going ok?

(Ex. 1 p. 1).

In response, Wolfe asked, "I don't have to answer questions?" (Ex. 1 p. 1). Agent Friend explained, "If you don't want to answer any question, then you don't have to, but I want to make sure you are aware of these rights that you have ok?" (Ex. 1 p. 1). Wolfe stated, "[y]eah[,] I'll do it" (Ex. 1 p. 1).  Agent Fried clarified, "So do you want to continue with me?" and Wolfe said, "yeah" (Ex. 1 p. 1).  Agent Friend immediately requested Wolfe read aloud and sign the written *Miranda* form, but Wolfe said, "I don't want to answer questions" (Ex. 1 p. 1).  Upon hearing Wolfe's response, Agent Friend informed Wolfe, "Okay that's completely up to you," then stated Agent Friend would need to talk to the wounded female victim and other people about the incident (Ex. 1 p. 1).  Wolfe then said he was intoxicated and "it all happened fast" (Ex. 1 p. 1-2).  Agent Friend again asked Wolfe if he wanted to talk about the incident; Wolfe answered in the affirmative with "[m]mhmm" and asked about a court hearing (Ex. 1 p. 2). Agent Friend stated he did not know about a tribal court hearing, he was with the FBI and the federal court (Ex. 1 p. 2).  Wolfe responded "I don't know.  I got nothing to say dude" (Ex. 1 p. 2).  In response, Agent Friend said, "You got nothing to say?  Okay I'm just gonna go on what [the victim] says then okay?  That's it." (Ex. 1 p. 2).  Wolfe continued the conversation by asking a question and laughing when Agent Friend refused to tell Wolfe what the victim said in her statement (Ex. 1 p. 2).  Agent Friend finally said to Wolfe "it looks like you're struggling if you want to talk to me or not . . . but I'm not a lawyer . . . it's up to you to make that decision" (Ex. 1 p. 2).  Immediately thereafter, Wolfe described the incident involving the wounded female victim (Ex. 1 p. 2-15).

## CONCLUSIONS OF LAW

Wolfe argues the court should suppress his statements made during the January 25, 2016, interview because he refused to sign the acknowledgment of his *Miranda* rights, while specifically telling Agent Friend he did not want to answer the questions.

"Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is reasonably likely to elicit an incriminating response from the suspect." *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014) (internal quotation marks omitted).

> Interrogation occurs when a law enforcement officer engages in either express questioning or its functional equivalent, which includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*United States v. Hernandez-Mendoza*, 600 F.3d 971, 976-77 (8th Cir. 2010) (**citing** *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (internal quotation marks omitted)). "[S]tatements made by a custodial suspect in response to interrogation are inadmissible unless the suspect has voluntarily, knowingly, and intelligently waived his right against self[-]incrimination." *United States v. Binion*, 570 F.3d 1034, 1040 (8th Cir. 2009). However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478; **see also** *Crisolis-Gonzalez*, 742 F.3d at 837 ("*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.") (internal quotations and citations omitted).

In order for evidence obtained as a result of custodial interrogation to be used against a defendant at trial, the Fifth Amendment requires an individual to both be advised of his constitutional rights by law enforcement and to make a valid waiver of those rights. **See** *Miranda*, 384 U.S. at 444. Before questioning begins, a suspect in custody must be informed of the following: (1) he has the right to remain silent; (2) his statements may be used against him in a court of law; (3) he has the right to an attorney; and (4) if he cannot afford an attorney, one will be appointed. *Id.* at 444, 469-70, 478-79. The purpose of the *Miranda* warning is to ensure the suspect is "aware of

the privilege against self-incrimination, under[stands] the consequences of waiving this privilege, and recognize[s] the adversarial nature of the proceedings." *United States v. Johnson*, 47 F.3d 272, 277 (8th Cir. 1995). "Neither the *Miranda* decision nor its progeny require the police to ask a suspect explicitly whether [the suspect] understands his rights." *United States v. Mayhew*, 380 F. Supp. 2d 915, 921 (S.D. Ohio 2005). Further, failing to explicitly question if the defendant understood his *Miranda* rights does not "vitiate the legality of [d]efendant's waiver." *Id.*

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). When determining whether a waiver was made voluntarily, knowingly, and intelligently, the court follows a two-step process:

> First, the waiver must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the suspect must have waived his rights with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted). A court "consider[s] the totality of the circumstances in determining whether a suspect's waiver is valid." *United States v. Gayekpar*, 678 F.3d 629, 638 (8th Cir. 2012). "The government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004).

"During an interrogation, '[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *United States v. Adams*, No. 14-3339, 2016 WL 1399354, at *3 (8th Cir. Apr. 11, 2016) (**quoting** *Miranda*, 384 U.S. at 473-74). "[O]nce a person in custody has invoked his right to remain silent, admissibility of any subsequent statements depends on whether his '"right to cut off questioning' was 'scrupulously honored.'" *United States v. Sawyer*, 588 F.3d 548, 554 (8th Cir. 2009).

"An invocation of the right to remain silent cannot be ambiguous or equivocal." *Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010). "To adequately invoke this right and effectively cut off questioning, a suspect must indicate 'a clear, consistent expression of a desire to remain silent.'" *United States v. Johnson*, 56 F.3d 947, 955

4

(8th Cir. 1995) (**quoting** *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989)). "Indirect, ambiguous, and unequivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*." *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (2010). A defendant must articulate a desire to remain silent "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request" to exercise his right to remain silent and terminate the interrogation. *Davis v. United States*, 512 U.S. 452, 459 (1994). The court must "consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent." *Johnson*, 56 F.3d at 955. "A denial of knowledge does not constitute an assertion of the right to remain silent." *Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001) (**citing** *United States v. Turner*, 551 F.2d 780, 782 (8th Cir. 977)). Likewise, a suspect's "[r]efus[al] to sign a written waiver of the privilege against self incrimination does not itself invoke that privilege." *United States v. Binion*, 570 F.3d 1034, 1041 (8th Cir. 2009); **see also** *Berghuis*, 560 U.S. at 388 ("Thus, after giving a *Miranda* warning, police may interrogate a suspect who has neither invoked nor waived his or her *Miranda* rights."); *Klingler v. United States*, 409 F.2d 299, 308 (8th Cir. 1969) (**noting** "*Miranda* does not require a written waiver").

Although not required, "it is often good police practice to attempt to clarify whether or not the suspect is actually invoking his rights." *Johnson*, 56 F.3d at 955 (**citing** *Davis*, 512 U.S. at 461). Alternatively, an officer may wait for a suspect to clarify his own words as the Eighth Circuit recently determined in *Adams*, 2016 WL 1399354, at *3. In *Adams*, the suspect did not unequivocally invoke his desire to remain silent when he told law enforcement, "[n]ah, I don't want to talk, man. I mean, I . . ." and engaged with the law enforcement officer for sixteen minutes without clarifying his intent to remain silent. *Id.*; **see also** *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013) (holding the statement "I guess you better get me a lawyer then" was not an unequivocal invocation of the right to an attorney).

Wolfe's statements taken as a whole did not indicate a clear, unequivocal, and unambiguous invocation of his right to remain silent. In this instance, Wolfe was advised of his *Miranda* rights and initially agreed to talk with Agent Friend. However,

5

when Agent Friend requested Wolfe read aloud and sign the document containing the *Miranda* warnings, Wolfe stated he didn't wanted to answer questions. When Agent Friend told Wolfe he would need to speak to others about the incident, Wolfe freely started talking about the circumstances of the incident, namely that he was inebriated and "it all happened fast" (Ex. 1 p. 1-2). Agent Friend followed "good police practice," as suggested in *Johnson*, "to clarify whether or not the suspect [was] actually invoking his rights" (56 F.3d at 955) by asking Wolfe if he wanted to talk about the incident and Wolfe answered with "[m]mhmm" (Ex. 1 p. 2).

Further, similar to *Adams* when the defendant told law enforcement "[n]ah, I don't want to talk, man. I mean, I . . ." (2016 WL 1399354, at *3) and engaged in further conversation with law enforcement, Wolfe did not unequivocally invoke his desire to remain silent when he told Agent Friend "I don't know. I got nothing to say dude" (Ex. 1 p. 2). Wolfe continued to speak with Agent Friend regarding the incident after Agent Friend told Wolfe "it looks like you're struggling if you want to talk to me[,] . . . it's up to you to make that decision" (Ex. 1 p. 2). Agent Friend acknowledged the ambiguity in Wolfe's responses and sought to determine Wolfe's intent, but ultimately allowed Wolfe the ability to make a statement or remain silent. It was after Agent Friend attempted to clarify Wolfe's intent that Wolfe chose to make statements regarding the incident. Agent Friend's actions were respectful of Wolfe's rights. There is nothing in the record to suggest Agent Friend employed persistent efforts or trickery to wear down the Wolfe's resistance and make him give a statement. Wolfe failed to adequately invoke his right to remain silent clearly and unambiguously. Therefore, Wolfe's statements made to Agent Friend regarding the incident should not be suppressed.

continued to speak with law enforcement officers immediately following his alleged invocation more than once confirmed his willingness to speak with the agent

The government is not obligated to ask a defendant clarifying questions to determine an ambiguous statement's meaning. Davis, 512 U.S. at 460.

The circumstances under which the statement was made objectively indicate that the defendant did not intend the statement as a clear assertion of his 5th Amendment

6

rights. As such, law enforcement did not act improperly when they continued the interview.

**IT IS RECOMMENDED TO SENIOR JUDGE JOSEPH F. BATAILLON that:**

Victor Wolfe's Motion to Suppress Statements (Filing No. 17) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within 14 days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 4th day of May, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge